UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAY PERALES<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 1:21-cv-00125-DCN<br>1:17-cr-00245-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court in the above-entitled matter is Petitioner Ray Perales's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Dkt. 1.[1] The Government filed a Response to Perales's Motion on June 28, 2021. Dkt. 5. Perales then filed several motions asking for extensions of time to file his Reply . *See* Dkts. 6, 8, 18. The Court granted the Motions to Extend, giving Perales until April 15, 2022. Dkt. 19.[2] Perales filed his Reply on April 15, 2022. Dkt. 21.[3] The Record has been adequately briefed and is ripe for review. For the reasons set forth below, the Court DENIES the Motion.

---

[1] In this Order, "CR–245" is used when citing to Perales's criminal case record in 1:17-cr-00245-DCN. All other docket citations are to the record in the instant civil case. Perales filed his original Motion to Vacate in his criminal case. CR–245, Dkt. 100.

[2] The Court also considered several other motions such as a Motion to Appoint Counsel and a Motion for Authorization to Conduct Discovery. The Court denied those requests. Dkt. 19. The Court did, however, order the transcript from Perales's change of plea hearing. *Id.*

[3] Perales also filed a Motion to Amend. Dkt. 22. A Motion to Amend was not necessary, however, and the Court will consider the information contained therein as part of its decision today.

## II. BACKGROUND

On May 29, 2018, Perales entered a plea of guilty pursuant to a plea agreement alleging one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. CR–245, Dkt. 59. As part of the agreement, Perales also admitted that at the time of the offense, he had been convicted of one prior felony drug offense which enhanced his sentence. *Id.* Moreover, Perales agreed to waive any right to appeal under § 28 U.S.C. 2255. *Id.* The only exception was the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel. *Id.*

During the change of plea hearing on July 13, 2018, Perales indicated his understanding that the range of punishment for the crime of Conspiracy to Distribute Methamphetamine was between 10 years to life. Dkt. 20, at 5. Perales also stated he understood that because he was being charged with a drug offense, any prior felony conviction of a drug offense could subject him to an increased punishment. *Id.* at 6. Perales also informed the Court that he was not threatened in any way or forced into agreeing to the plea agreement. *Id.* at 15–16. The Court, therefore, found that his guilty plea was a knowing and voluntary plea. *Id.* at 18. Moreover, Perales was asked whether he was satisfied with his attorney's representation. *Id.* at 5. He stated he was. *Id.*

On October 9, 2018, the Court entered judgment and sentenced Perales to 262 months of incarceration. CR–245, Dkt. 81.[4] On March 16, 2021—two and a half years after

---

[4] The guideline range as calculated by probation was 360 months to Life. However, Perales moved for a variance based upon the disparity between tested and non-tested methamphetamine. The Court, following its usual practice, adopted that variance. Therefore, the sentence imposed was below the applicable guideline range. CR–245, Dkt. 82.

judgement—Perales filed a Motion to Vacate, Set Side, or Correct Sentence pursuant to 28 U.S.C. § 2255. Perales makes four claims in his Petition: (1) the government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) his guilty plea was coerced; (3) his trial counsel was ineffective with respect to a Motion to Suppress proceeding; and (4) his trial counsel was also ineffective with respect to the plea agreement.

The Government responded. *See* Dkt. 5. The Government makes several arguments as to why the Court should dismiss Perales's § 2255 Petition. *Id.* First, the Government contends that all the claims should be dismissed because Perales's Motion is untimely. *Id.* at 4–6. Second, it contends Perales's first claim (withholding evidence) should be denied because he failed to show the Government actually withheld information. *Id.* at 6–7. Third, the Government argues the second claim (coercion) should be dismissed because Perales: (1) waived his right to appeal this issue, (2) it is procedurally barred, and (3) because the argument on the merits is incorrect according to binding law. *Id.* at 7–9. Fourth and finally, the Government argues the third and fourth claims (ineffective assistance of counsel) are also without merit and should be dismissed. *Id.* at 10–14.

### III. LEGAL STANDARD

Under the applicable statute of limitations, a § 2255 motion must be brought within one year after a judgment of conviction becomes final unless the motion has been statutorily tolled according to 28 U.S.C. § 2255(f)(2)–(4). A judgment of conviction becomes final when it "has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari denied." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001). However, a petitioner is entitled to

MEMORANDUM DECISION AND ORDER-3

equitable tolling of a § 2255 petition if two elements are met: (1) the petitioner has been pursuing his rights diligently, and (2) there was an extraordinary circumstance beyond a prisoner's control that prevented timely filing. *Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020) (citing *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016)).

If timely filed, § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

MEMORANDUM DECISION AND ORDER-4

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

### A. Equitable Tolling[5]

The Government's first contention is that Perales filed his § 2255 petition late—18 months late to be exact. Dkt. 5, at 4–6. To be within the Statute of Limitations, Perales would have to have filed his § 2255 Petition by October 9, 2019—one year after his October 9, 2018 judgment of conviction. Perales, however, filed on March 16, 2021. Dkt. 1. The fact that Perales filed late is not disputed. Instead, Perales filed a Motion for Equitable Tolling. Dkt. 17. Perales argues equitable tolling is warranted in this case because he has been unable to use the Idaho Department of Corrections ("IDOC") law library. *Id.* at 4.

---

[5] The Court in its earlier ruling determined that Perales's Motion for Equitable Tolling was subsumed within the arguments relative to his § 2255 Petition. Dkt. 19, at 5. Therefore, the Court dismissed the Motion as moot but noted that it would consider the arguments when ruling on Perales's § 2255 Motion. *Id.* The Court now considers the arguments raised by Perales in his Motion for Equitable Tolling. Dkt. 17.

Perales provides support for the idea that when a law library is unavailable or lacking in resources in a prison setting, there are grounds to grant an equitable tolling request. *See, e.g., Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013); *Schinkel v. Kramer*, 34 F. App'x 257, 258–59 (9th Cir. 2002); *Roy v. Lampert*, 465 F.3d 964, 967, 974–75 (9th Cir. 2006); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). The Court notes, however, that in each of these cases, the reviewing court did not outright grant an equitable tolling motion. Rather, the courts have remanded the matters for an evidentiary hearing "because grounds for equitable tolling is highly fact-dependent, and because the district court[s are] in a better position to develop the facts. *Early*, 233 F.3d at 1148. Thus, the Court must evaluate the facts which led to the late submission of Perales's § 2255 Petition and whether Perales was: (1) pursuing his rights diligently, and (2) whether there were extraordinary circumstances which prevented him from filing on time. *See Smith*, 953 F.3d at 590 (citations omitted).

According to a Declaration by Perales, the Idaho State Correctional Center ("ISCC") "did not have any resources regarding federal criminal law that could assist [Perales] with pursuing a § 2255 [Petition]." Dkt. 17–1, at ¶ 5. Perales continues to state that "[what ISCC] made available to [Perales was], in truth and fact, the contents [he] provided to this Court in [his] § 2255 at Documents 1–5, page 6 through 9." *Id.* at ¶ 5.[6]

---

[6] The Government points out that according to the paralegal at ISCI, inmates do have access to federal rules and documents related to § 2255 Petitions. Dkt. 5, at 5 n.1. The ISCI paralegal explained that Perales did not request any resources pertaining to § 2255 petitions while housed there. Dkt. 5-1, at 4. The Court notes, however, that Perales had not yet been sentenced when he was housed at ISCI. Dkt. 17–1, at ¶ 4. Thus, whatever ISCI provided is a moot point. With this said, the facts are unclear as to what kind of legal resources ISCC provides verses what legal resources ISCC provides. What we do know, however, is that ISCC provided a § 2255 form to Perales. *See id.* at ¶ 5. S

Perales was housed at ISCC from March 2018 through May 2020—plenty of time to submit his § 2255 Petition. *Id.* at ¶ 4. It's unclear why Perales waited until March 2021 to submit his Petition; particularly when it appears ISCC could have made available to him—had he simply asked—the materials he eventually submitted to the Court in March 2021.

Perales attempts to explain his dilemma. Due to some setbacks, Perales was moved from ISCC to the Idaho Maximum Security Institution ("ISMI"). *Id.* at ¶ 6. He was housed in IMSI from May 2020 until March 2021. *Id.* This explanation, however, simply creates even more confusion. Considering that his § 2255 Petition was due in October of 2019, anything that may have precluded Perales from filing during his time at IMSI is irrelevant.[7]

The question then comes back to why Perales did not file his § 2255 petition until March of 2021 when housed at ISCC.[8] Perales's only argument is that he was not afforded

---

[7] Even so, the Government provided documentation that reveals that Perales knew how to request resources from the paralegal at IMSI. Dkt. 5-1, at 2–3. Perales notes that the paralegal would not visit him in person—thus preventing him from asking legal questions about his case. Dkt. 17–1, at ¶ 11. This argument does not hold any weight. The Ninth Circuit has held that prisoners are not entitled to any advice from a paralegal. *Alexander v. Schriro*, 312 F. App'x. 972, 975 (9th Cir. 2009) ("[Petioner] was not entitled to and should not have relied on any advice from the paralegal."); *see also Guerrero v. Ryan*, 2019 WL 3798205, at *3 (D. Ariz. Aug. 13, 2019) (holding that despite petitioner not being properly advised by paralegals at prison complex regarding statute of limitations, there was nothing in the record that made it impossible for petitioner to timely file his habeas petition). The mere fact that a paralegal was not physically present does not rise to an extraordinary circumstance.

[8] Again, a petitioner must be diligent in pursuing his rights. The Ninth Circuit has interpreted this to mean that a petitioner "must show that he has been reasonable diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well." *Smith v. Davis*, 953 F.3d 582, 598–99. There is no indication from Perales that he was actively pursuing his rights while in IMSI. Perales only states that he wasn't aware that resources related to habeas corpus petitions were available. Dkt. 17-1,at ¶ 9. Instead of diligently pursuing his rights, he simply did not request the resources available to him. Allowing for this type of argument to stand could pose problematic in the future. It would allow prisoners to claim ignorance when they failed to diligently pursue their rights. *See Meda v.*

MEMORANDUM DECISION AND ORDER-7

any resources regarding federal criminal law. Notably, his argument is not that he was unable to file his § 2255 petition in a timely manner. *See Ramirez v. Yates*, 571 F.3d 993 (9th Cir. 2009) ("Ordinary prison limitations on [a petitioner's] access to the law library and copier . . . were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner"). To the contrary, Perales admits that ISCC staff provided him with the necessary papers to file his § 2255 Petition. Dkt. 17–1, at ¶ 5. His only contention then seems to be that he was unaware of the time limitations set forth in § 2255. *Id.* at ¶ 7 ("I did not become aware of the statute related to § 2255 until, *[sic]* the 'IDOC' issued a memorandum to the inmates in my unit."). This does not rise to an extraordinary circumstance, nor gives confidence to the Court that Perales was diligent in pursuing his rights. *Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir.2006) (holding that ignorance of the law is not an extraordinary circumstance warranting equitable tolling).

The Court finds that equitable tolling does not apply and, therefore, Perales's § 2255 Motion is untimely. This alone warrants dismissal. However, even if the Court were to consider the Motion on the merits, the Motion would be denied. The Court briefly considers each of Perales's claims.

### B. Brady Violation

Perales's first contention is that the Government withheld exculpatory evidence that was favorable to him in his trial proceedings. Dkt. 1-1, at 2. He argues that the Government violated his Fifth and Fourteenth Amendment rights. *See Brady*, 373 U.S. at 87 ("We now

---

*Curry*, 2010 WL 2195828, at *7 (E.D. Cal. May 27, 2010) (a "petitioner's confusion or ignorance of the law is not alone a circumstance warranting equitable tolling").

MEMORANDUM DECISION AND ORDER-8

hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.").[9] To successfully show a *Brady* violation, a petitioner must prove: (1) the suppressed evidence was favorable to the accused; (2) the evidence was suppressed by the government; (3) the suppressed evidence must be material to the guilt or innocence of the accused. *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007).

Evidence is material "if there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *United States v. Marr*, 2013 WL 12128768, at*3 (D. Idaho Mar. 6, 2013) (quoting *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995)). Determining whether a defendant would have gone to trial is an objective test that must focus on how persuasive the withheld evidence would have been. *Sanchez*, 50 F.3d at 1454.

---

[9] There remains the question of whether Perales waived his *Brady* rights upon signing the Plea Agreement. The Ninth Circuit held that *Brady* rights are not automatically waived and any material exculpatory evidence and impeachment evidence must be disclosed prior to entry of a guilty plea. *See United States v. Ruiz*, 241 F.3d 1157, 1164–1167 (9th Cir. 2021). However, the United States Supreme Court reversed the Circuit and held that the Constitution does not require the Government to provide a "preguilty plea disclosure of exculpatory impeachment information." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). What was unclear from the Supreme Court's decision is whether that standard applies to exculpatory evidence (as opposed to impeachment evidence). *See United States v. Harshman*, 2021 WL 3929926, at *2 (9th Cir. Sept. 2, 2021) (Nelson, J., concurring) (noting (1) that the Supreme Court did not clearly resolve whether the standard that applied to impeachment evidence also applies to exculpatory evidence; (2) that post *Ruiz*, Ninth Circuit precedence may still be inconsistent with *Ruiz*; (3) that sister circuits have held that *Ruiz* did not make a distinction between exculpatory evidence and impeachment evidence.) If *Ruiz* does apply to exculpatory evidence, Perales would have no right to the evidence he now seeks given his waiver. However, the Ninth Circuit seems to have taken the position that *Ruiz* did distinguish between exculpatory evidence and impeachment evidence, *see id*, despite originally declaring "such a distinction would [not] make much sense." *Ruiz*, 241 F.3d at 1166. The Court declines to rule one way or the other due to the simple fact that even if Perales did not waive his *Brady* rights, his *Brady* violation claim would fail.

MEMORANDUM DECISION AND ORDER-9

Evaluating these standards, it is clear that the evidence allegedly suppressed by the Government does not amount to a *Brady* violation. Perales argues that because several different government agencies were involved in his criminal investigation, there must be discovery documents written up by those agencies that he was never provided. Even if this is correct,[10] Perales has failed to show how these documents might be favorable to him. Instead, he merely lists possible documents that the Government may have withheld.[11] Dkt. 1-1, at 2. Moreover, there is no mention by Perales regarding how these documents were material to his decision to plead guilty. *See Marr*, 2013 WL 12128768, at *3 (noting that the petitioner failed to demonstrate how the withheld evidence was material).[12]

In short, Perales has provided the Court with little more than his personal speculation that other documents exists and that they might be relevant. Given that Perales has failed to show how these documents would be favorable to him or how they would even be material to his decision to plead guilty, the Court DENIES his *Brady* violation claim.

### C. Coercion

Perales next claims that he was coerced into signing his guilty plea. Dkt. 1-1, at 3–

---

[10] The Government in its brief argues that not all agency members of the Organized Crime and Drug Enforcement Task Force ("OCDETF") participate in every single OCDETF investigation. Dkt. 5, at 6. The Court agrees. Just because an investigation is classified as a OCDETF investigation, does not mean each and every OCDETF agency is involved. As such, not every agency part of the OCDETF will write a report.

[11] The Government states that these documents do not exist. Dkt. 5, at 5–6.

[12] Perales also contends that there should be two additional DEA reports (only one was filed). Dkt. 1-1, at 3. His only argument is that there were three DEA Agents involved. *Id.* However, as the Government points out, there is "no requirement that every agent present for a search author their own separate investigative report." Dkt. 5, at 7.

4. He claims that the Government threatened him into signing the agreement—that if he did not, he would face additional charges and incarceration. *Id.* Moreover, he argues that the Plea Agreement was offered prior to the Court ruling on his Motion to Suppress.[13] *Id.*

According to Perales, he was forced to sign the agreement prior to his Motion being ruled on and prior to being able to conduct more discovery. *Id.* The Government responds by arguing that Perales was not coerced into signing the agreement given his statements at the change of plea hearing.[14] The Government also asserts that Perales did not enter his guilty plea until July 13, 2018, which was one month after the Court denied his suppression motion on June 11, 2018.[15] The Court agrees with the Government.

The evidence clearly shows Perales was not coerced into signing the plea agreement. During the change of plea hearing, Perales stated under oath that he was not threatened or forced into signing the agreement. *See* Dkt. 20, at 15. He stated that he read every provision of the plea agreement, and he understood that the agreement waived his rights to appeal his conviction or pursue habeas corpus relief. *Id.* at 15–16. When counsel was asked about whether Perales's entry of guilty is voluntary and knowledgeable, he answered in the

---

[13] The Court will not go into great detail about Perales's Motion to Suppress. In the end, the Motion was denied. *See United States v. Perales*, 2018 WL 2905719 (D. Idaho June 11, 2018).

[14] The Government also raised three other arguments: (1) Perales waived his right to raise this argument in the plea agreement; (2) the argument is barred under the procedural default doctrine; and (3) binding precedent would preclude it. Dkt. 5, at 7–9. Given the statements by Perales at the change of plea hearing, the Court does not find the need to analyze each of these arguments. Suffice it to say, the Court agrees.

[15] The Court will address this issue here. It is true that Perales signed the plea agreement prior the Court's *ruling* on his motion to suppress. However, he did not *enter* his guilty plea until the change of plea hearing on July 13, 2018. Moreover, it was understood between counsel for the Government and counsel for Perales that the plea agreement would not be filed until the Court ruled on his suppression motion. *See* Dkt. 5-22 (email exchanges between counsel for the Government and counsel for Perales). Perales's argument holds no water.

MEMORANDUM DECISION AND ORDER-11

affirmative. *Id.* at 18.[16] Perales understood the sentencing guidelines as well as the minimum and maximum sentence that could be imposed. *Id.* at 10, 17.

Based upon Perales's responses, the Court found his plea of guilty knowing and voluntary. *Id.* at 18.[17] The Court is not inclined to change its opinion now. Courts routinely find that "[s]tatements made in open court at the time of a plea carry a strong presumption of verity and are entitled to great weight." *United States v. Rodriguez-Duenas*, 2007 WL 1381779, at *5 (D. Idaho Apr. 30, 2007) (citing *Chizen v. Hunter,* 809 F.2d 560, 562 (9th Cir.1986)). Therefore, the Court finds that Perales was not coerced, and that his guilty plea was voluntary, knowing, and intelligent.

## D. Ineffective Assistance of Counsel

Next, Perales claims ineffective assistance of counsel supports his Petition. As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[18] Therefore, Perales must satisfy both prongs of "the two-part *Strickland v. Washington* test." *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985) (citing *Strickland*, 466 U.S. at 687–90); *see also Lee*

---

[16] Perales argues doing so amounted to ineffective assistance of counsel. This will be addressed below.

[17] Under *Brady*, a plea of guilty is constitutionally valid only if it is voluntary and intelligent. *See Brady*, 397 U.S. at 748.

[18] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

MEMORANDUM DECISION AND ORDER-12

*v. United States*, 137 S. Ct. 1958, 1964–67 (2017). To establish ineffective assistance under that test here, Perales must show: (1) that his counsel's advice to plead guilty was not "'within the range of competence demanded of attorneys in criminal cases,'"; and (2) "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56–59 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also United States v. Silveira*, 997 F.3d 911 (9th Cir. 2021).[19]

In this case, Perales alleges ineffective assistance of counsel with regards to his suppression motion as well as with his guilty plea. Dkt. 1-11, at 4, 6. Both arguments are unfounded. First, Perales claims that his counsel omitted information in his suppression motion which could have led to a different outcome. In short, Perales claims that his counsel should have included in the motion to suppress that Perales was not the one living in the trailer—the trailed that was the subject of the motion to suppress. However, as the Government points out, this fact was considered by the Court. *See Perales*, 2018 WL 2905719, at 3–4 (distinguishing between Perales's home and the trailer home). What's more, the Government never claimed Perales was living in the trailer home. In fact, the Government acknowledged that Perales did not live in the trailer home but rather resided at a home in Caldwell, Idaho. *See* Dkt. 50, at 3.

---

[19] To satisfy the *Strickland* prongs, Perales must identify specific deficient acts or omissions of defense counsel. *Strickland*, 466 U.S. at 690. Also, when a defendant's Section 2255 claim "is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing." *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004).

MEMORANDUM DECISION AND ORDER-13

Second, Perales claims ineffective assistance of counsel when his attorney advised him to accept the plea agreement. Perales states that his counsel advised him to sign the plea agreement prior to the Court's ruling on the motion to suppress. Dkt. 1-11, at 6. Moreover, he claims he was never advised that he could appeal the denial of his suppression motion. *Id.* The Court disagrees and holds that Perales's counsel was not ineffective. First, Perales himself stated that he was satisfied with his counsel's representation during the change of plea hearing. Dkt. 20, at 5. Second, the claims posed by Perales do not rise to the level required under *Strickland. See Strickland*, 644 U.S. 668, 687 ("This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment."). Perales makes vague, unsupported allegations, but nothing in his Petition suggests that counsel actually made errors that rise to the level of not guaranteeing Perales's Constitutional rights.

In sum, the Court DENIES Perales's ineffective assistance of counsel claim.

## V. CERTIFICATE OF APPEALABILITY

When a district court enters a final order denying a petition under § 2255, it must either issue or deny a certificate of appealability ("COA"). By statute, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Moreover, when a dismissal is also warranted on procedural grounds, the movant must also show that reasonable jurists would find the procedural bar debatable. *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set forth above, the Court concludes that Perales has failed to make any showing, let alone a substantial showing, of the denial of a constitutional right. Accordingly, the Court will not issue a COA.

If Perales wishes to proceed to the United States Court of Appeals for the Ninth Circuit, he must file a notice of appeal in this Court within thirty days after entry of this Order, and he must seek a COA from the United States Court of Appeals for the Ninth Circuit in accordance with Federal Rule of Appellate Procedure 22(b)(2). *Id*. ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c) . . . .").

## VI. CONCLUSION

For all the reasons stated above, the Court finds no reason to set aside Perales's conviction or sentence. First, Perales filed his § 2255 Petition 18 months late and equitable tolling does not apply. Second, even on the merits, Perales would not succeed for the reasons given above. Finally, the Court finds it unnecessary to conduct an evidentiary hearing on the same. the request for a hearingis DENIED.

## VII. ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

    a. Perales's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt.1); CR–245 (Dkt. 100) is **DENIED**. The Clerk of the Court is

MEMORANDUM DECISION AND ORDER-15

      directed to file this Order in both the criminal and civil case.

b. The Court finds there is no need for an evidentiary hearing.

c. No certificate of appealability shall issue. Perales is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

d. If Perales files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: October 18, 2022

David C. Nye  
Chief U.S. District Court Judge